**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CHANTIA MILLER, | : | |
| *Plaintiff*, | : | Case No. 1:25-cv-772 |
| vs. | : | Judge Jeffery P. Hopkins |
| CITY OF CINCINNATI, et al., | : | |
| *Defendants*. | : | |

## OPINION AND ORDER

The law does not mandate a perfectly harmonious workplace, but it does establish a firm baseline for certain rights and working conditions all employees must be afforded, such as the right to be free from gender-based discrimination and sexual harassment, among other protections guaranteed by our Constitution and state and federal laws. Contending her employer crossed this line, Chantia Miller ("Lt. Miller" or "Plaintiff"), brings this action against the City of Cincinnati ("the City" or "Defendant") and two of her superiors in the Cincinnati Police Department, Defendants Col. Teresa Theetge and Captain Snider (collectively, "Defendants") under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983, alleging hostile work environment, retaliation for protected speech, deprivation of procedural due process and municipal liability.

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings ("Motion") (Doc. 15), which requests judgment on Counts IV, V, VII, and VIII in connection

with claims asserted in Lt. Miller's First and Second Amended Complaints. [1] In Count IV of the First Amended Complaint, Plaintiff alleges that "the City is vicariously liable for the harassing conduct of Captain Snider because of his status as Lt. Miller's supervisor," under Title VII of the Civil Rights Act 1964 and Section 4112.02 *See* First Am. Compl. Doc. 3, ¶¶ 86–92. In Count V, Plaintiff alleges Defendants Theetge and Snider engaged in First Amendment retaliation against Plaintiff in violation of 42 U.S.C. §1983.[2] *See id.*, ¶¶ 94–103. Count VII alleges Defendants Theetge and Snider deprived Plaintiff of procedural due process rights. *See id.*, ¶¶ 104–108. And Count VIII alleges that Defendant City is separately liable under Section 1983 for alleged First and Fourteenth Amendment violations. *See id.*, ¶¶ 109–112.

For the reasons set forth below, the Court finds that Lt. Miller has plausibly asserted a claim that the City contributed to a hostile work environment predicated on sexual harassment pursuant to Title VII (Count IV) but has failed to state claims under the First Amendment and Due Process Clause against her superiors, Defendants Theetge and Snider (Counts V, and VII). Consequently, because Plaintiff failed to properly assert claims for any underlying constitutional violations committed by Defendants Theetge and Snider her claims for similar relief against the City cannot survive (Count VIII). Accordingly, the Court

---

[1] As a general rule, an amended complaint supersedes all prior pleadings. *See City of Logan, Ohio v. Stantec Consulting Servs., Inc.,* No. 2:24-cv-3547, 2025 WL 1517462, at *3 (S.D. Ohio Feb. 21, 2025). Here, however, Plaintiff's Second Amended Complaint purports to "begin[] where" the First Amended Complaint left off, while selectively revising certain counts and omitting Counts VII and VIII. Second Am. Compl., Doc. 13, ¶ 114. Because Plaintiff fails to clarify whether these omitted claims have been intentionally abandoned or are meant to be preserved through re-allegation, the precise scope of the active claims remains entirely ambiguous. Regardless, the Court will address these claims to the extent they can be reasonably discerned from this disjointed record.

[2] For consistency and clarity, the Court will refer to Plaintiff's First Amendment Retaliation claim against Defendants Theetge and Snider as "Count V." While Plaintiff's First Amended Complaint originally omitted Count V and labeled this claim as Count VI, the claim was properly designated as Count V in the Second Amended Complaint.

**GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Judgment on the Pleadings (Doc. 15).

## I. BACKGROUND

Plaintiff Chantia Miller is a Black woman employed by the Cincinnati Police Department ("CPD") as a lieutenant. First Am. Compl., Doc. 3, ¶ 12. Lt. Miller has been a police officer in this department since 2003 and has consistently earned high performance ratings from her supervisors that meet or exceed CPD's standards. *Id.* Throughout her tenure with CPD, Lt. Miller developed trauma-related conditions such as ADHD, PTSD, Traumatic Brain Injury, Generalized Anxiety Disorder, Syncope, and IBS. *Id.* ¶ 14. Lt. Miller's supervisors, Captains Douglas Snider and Robert Wilson, informally accommodated symptoms of her medical conditions between 2021 and 2025. *Id.* ¶ 17.

In March 2024, Lt. Miller was assigned to the night shift. *Id.* ¶ 22. Lt. Miller disclosed to then-Chief Theetge that working the night shift would exacerbate her medical conditions and requested to be removed to another shift, which Chief Theetge refused. *Id.* About a month later, her supervisor, Captain Snider, noted in a performance evaluation that Lt. Miller "had a crush on him," and he began texting Lt. Miller "inappropriately." *Id.* ¶ 24. Lt. Miller objected to Captain Snider's communications and asked him to stop sending inappropriate messages in July 2024. *Id.* ¶ 27. In September 2024, Captain Snider ignored her request and "continued sending unwanted messages." *Id.*

Lt. Miller requested multiple transfers and other accommodations throughout late 2024 into early 2025. *Id.* ¶¶ 28-30. She was eventually transferred to the position of District One administrative lieutenant in March 2025 where she claims that she was "not assigned any meaningful projects, tasks, or responsibilities." *Id.* ¶¶ 31, 33.

On April 30, 2025, Lt. Miller received a performance review evaluation showing "exceeds standards, minus." *Id.* ¶ 35. On or about that same day, Captain Snider criticized Lt. Miller's appearance, commenting on her "makeup, nails, and [] nose ring." *Id.* ¶ 36; Compl., Doc. 11, Pl. Ex. 1, PageID 22. Lt. Miller then began having panic attacks and difficulty breathing, which are symptoms of one of her medical conditions. First Am. Compl., Doc. 3, ¶ 36. Lt. Miller filed a complaint with the City on May 2, 2025, alleging discrimination and retaliation, as well as Captain Snider's inappropriate conduct. *Id.* ¶ 37. That day, Lt. Miller discovered she was facing three separate investigations over minor infractions, including one targeting her appearance. *Id.* Also, unbeknownst to Lt. Miller at that time and during this same period, Captain Snider authored a request that Lt. Miller be evaluated for fitness for duty for suspected "mental instability." *Id.* ¶ 38.

Lt. Miller filed an EEOC charge and a sexual harassment complaint with the City's HR department on July 2, 2025. *Id.* ¶ 49. On July 3, 2025 she was placed on administrative leave with an interview regarding her complaints scheduled for July 9, 2025. *Id.* ¶ 50. Lt. Miller's interview took place as scheduled and resulted in her transfer to the CPD Records Section. *Id.* ¶ 52. Lt. Miller attended a fitness for duty evaluation on September 18, 2025, and her police powers were suspended based on findings in reports primarily authored by captains Snider, Wilson, and Burns in October 2025. *Id.* ¶¶ 54–55. On October 21, 2025, Miller was "ordered to leave and return to the Records Section without explanation." *Id.* ¶ 56.

In January 2026, the Ohio Police and Fire Pension Fund Board recommended that Lt. Miller be returned to full duty with reasonable accommodations. Second Am. Compl., Doc. 13, ¶ 120. Thereafter, Lt. Miller requested remote, part-time, or flexible daytime schedule options. *Id.* ¶ 121. On March 10, 2026, the City wrote Lt. Miller a letter indicating that her

requested accommodations do not comport with the duties of her current position and offered her a position as a "Clerk Typist" in the Police Records Department. *Id.* ¶¶ 123–124.

Lt. Miller filed the instant lawsuit against Defendants on October 24, 2025. Doc. 1. She later filed First and Second Amended Complaints on December 19, 2025 and May 29, 2026. Docs. 3, 13. Defendants filed the Motion for Judgment on the Pleadings presently under consideration. Doc. 15. Plaintiff filed a Response (Doc. 17) and Defendants filed a Reply (Doc. 18) in support of their motion. This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(c)

The standard of review for a "Rule 12(c) motion [for judgment on the pleadings] is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). To state a claim upon which relief may be granted, "movants must satisfy the pleading requirements set forth in Rule 8(a)." *Stonebridge Operating Co., LLC v. Antero Res. Corp.*, 510 F. Supp. 3d 567, 570 (S.D. Ohio 2020). While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (clarifying the plausibility standard articulated in *Twombly*). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as

true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555 (internal quotations omitted)).

Stated differently, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations and quotation marks omitted). Even so, "the court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations, and it will consider as true only those factual allegations which meet a threshold test for plausibility." *Milner v. Biggs*, No. 2:10-cv-904, 2012 WL 1188274, at *11 (S.D. Ohio Apr. 6, 2012), *aff'd*, 522 F. App'x 287 (6th Cir. 2013).

**B. Matters Considered**

As noted, Defendants move for judgment on the pleadings with respect to Counts IV, V, VII, and VIII of Lt. Miller's First Amended Complaint, as incorporated into Lt. Miller's Second Amended Complaint. Like motions under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court considers Defendants' Motion under Rule 12(c) using the same rules of the road. Consequently, the facts taken from the various Complaints Plaintiff filed in this case (the Second Amended Complaint, in confusing fashion, building off of and incorporating by reference certain facts and allegations asserted in the First Amended Complaint) and from the exhibits attached thereto, are appropriately considered part of the record for purposes of ruling on Defendants' Motion. *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). In ruling on a Rule 12 dispositive motion, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record

of the case and exhibits attached to [a party]'s motion . . . so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. LAW AND ANALYSIS

Lt. Miller's Amended Complaint asserts claims: (1) against the City for maintaining a hostile work environment under Title VII and Section 4112.02; (2) against her supervisors for retaliation based on her exercising her First Amendment rights to free speech; (3) against her supervisors for depriving her of procedural due process rights and (4) and against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (a "*Monell*" claim) predicated on its alleged role in violating her First Amendment and due process rights. The Court will now address each of these claims in turn.

### A. Sexual Harassment Hostile Work Environment Claim

Lt. Miller contends that she suffered from sexual harassment based on the fact that she was subjected to a hostile work environment violative of provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) and O.R.C. § 4112.02. Ohio courts have long held that "the elements and legal standards for evaluating hostile work environment sexual harassment claims are the same under both federal and state law." *Rinehart v. PNC Bank, N.A.*, 219 F. Supp. 3d 682, 693 (S.D. Ohio 2016) (citing *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 828 (6th Cir. 2000)). Thus, the Court will consider Plaintiff's Title VII and Section 4112.02 hostile work environment claims together.

To establish a prima facie claim of hostile work environment sexual harassment under Title VII, Lt. Miller must demonstrate that "(1) she is a member of a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on her sex, (4)

the harassment unreasonably interfered with plaintiff's work performance and created a hostile or offensive work environment that was severe and pervasive, and (5) the employer knew or should have known of the charged harassment and unreasonably failed to take prompt and appropriate corrective action." *Minnich v. Cooper Farms, Inc.*, 39 F. App'x 289, 293 (6th Cir. 2002).

While this framework "creates a backdrop against which the Court can assess plausibility," *Southall v. Ford Motor Co.*, 645 F. Supp. 3d 826, 833 (S.D. Ohio 2022), it has long been the rule that plaintiffs in these cases, including Lt. Miller, are not required to prove a prima facie case under this framework to satisfy this pleading standard. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). To meet the rather modest standard, Lt. Miller "must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference, that [Defendants] discriminated against [Plaintiff] with respect to her compensation, terms, conditions, or privileges of employment, because of her race, color, religion, sex, or national origin." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (emphasis and internal quotations omitted) (cleaned up). The Complaint need not present "'detailed factual allegations.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Here, Lt. Miller contends that the following incidents contributed to a hostile work environment: (1) Captain Snider wrote in a formal performance evaluation that Plaintiff "had a crush on him;" (2) Captain Snider began texting Plaintiff "inappropriately" in or around the time of April 2024, continuing through about September 2024, despite Plaintiff's objections to the text messages in July 2024; (3) Captain Snider criticized Miller's physical appearance at work; and (4) Captain Snider commented "it's okay, it's not like I have children or a family to understand" in response to Plaintiff's request for a more flexible schedule. First Am.

Compl., Doc. 3, ¶¶ 24, 27, 36; Doc. 17, PageID 130. Defendants contest the sufficiency of these factual allegations with respect to whether Lt. Miller has shown that the harassment was based on her sex and that it was sufficiently severe or pervasive. Doc. 15, PageID 113–115. We address each of Defendants' arguments.

**1. Sex-Based Harassment**

Defendants argue that Lt. Miller's Complaint lacks sufficient factual detail to establish that the conduct she alleged was motivated by her gender. Doc. 15, PageID 114. Sixth Circuit precedent establishes that "Title VII protects any unequal treatment that would not have occurred but for the employee's sex, even if the conduct is non-sexual." *Cecil v. Louisville Water Co.*, 301 F. App'x 490, 499 (6th Cir. 2008). The court in *Cecil v. Louisville Water* found that a supervisor's comments that the plaintiff "dressed too nicely" and resembled an attractive female character on a television sitcom were gender-specific in nature. *Id.* Indeed, "a reasonable jury could find that at least some of the harassment would not have occurred had [the plaintiff] been a male." *Id.*

Here, Lt. Miller has sufficiently pleaded that Captain Snider's comments were at least motivated, in part, by her gender. Like in *Cecil*, Lt. Millers's supervisor, Captain Snider, similarly commented on her appearance. First Am. Compl., Doc. 3, ¶ 36. Lt. Miller's EEOC charge describes in detail that Captain Snider made inappropriate remarks regarding her "makeup, nails, and [] nose ring," all of which are traditionally associated with feminine presentation and dress. Compl., Doc. 11, Pl. Ex. 1, PageID 22. Moreover, Captain Snider's comments about her home and family life can be seen as gender-specific in nature, as women are traditionally viewed as caretakers. Finally, Captain Snider's inappropriate text messages and written submission regarding a perceived romantic attraction carry inherently gendered

and sexualized connotations. *See generally Cecil*, 301 F. App'x 490; *see also Prater v. Lucky You, Inc.*, No. 2:13-cv-549, 2014 WL 6982663, at *5 (S.D. Ohio Dec. 9, 2014) (finding "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" establish harassment based on sex).

### 2. Severe or Pervasive Harassment

Defendants further argue that Lt. Miller failed to plead sufficient facts to establish severe or pervasive harassment, citing a lack of detail regarding the nature and frequency of Captain Snider's texts. Doc. 15, PageID 113. The Court agrees that Plaintiff's Complaint lacks significant detail with regard to Snider's text messages to Lt. Miller. However, as Lt. Miller correctly notes, the pleading standard here does not require detailed factual allegations proving she will ultimately prevail on each element of her claim. *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Rather, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz*, 534 U.S. 506, 512 (2002) (quoting Fed. Rule Civ. Proc. 8(a)(2)). In *Swierkiewicz*, the court found this standard was met where the plaintiff's employment discrimination complaint "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination." *Id.* at 514.

In the case at bar, the Complaint establishes a timeline for when Lt. Miller received the text messages, characterizes the messages as inappropriate, and describes specific comments Captain Snider made about Lt. Miller's romantic attractions in a formal performance evaluation. First Am. Compl., Doc. 3, ¶¶ 24, 27. Although the Complaint does not quote the exact dialogue or specify the precise number of text messages sent, it demonstrates that more than a few inappropriate communications continued over the course

of several months despite Lt. Miller's explicit objection. *See Jones v. Fluor Facility & Plant Servs.*, No. 24-5249, 2025 WL 707869, at *8 (6th Cir. Mar. 5, 2025) ("[H]arassing acts and comments of a 'continual' nature can constitute pervasive harassment and evidence of an objectively hostile work environment."). Accordingly, accepting Lt. Miller's allegations as true and construing them in a light most favorable to her, when presented with these facts a reasonable jury could easily draw an inference that Captain Snider's conduct was sufficiently severe or pervasive so as to establish a plausible claim. Thus, the Court finds that dismissal of Lt. Miller's hostile work environment claim is unwarranted, at least, at this early stage in the proceedings.

**B. First Amendment Retaliation Claim**

Lt. Miller also alleges that Defendants Chief Theetge and Captain Snider retaliated against her in violation of her rights under the First Amendment. To establish a First Amendment Retaliation claim under 42 U.S.C. § 1983, Plaintiff must demonstrate "(1) that she was engaged in a constitutionally protected activity; (2) that the defendants' adverse action caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of [her] constitutional rights." *Thompson v. Ohio Civil Rights Comm'n*, No. C-1-06-479, 2009 WL 10679436, at *13 (S.D. Ohio July 7, 2009) (citing *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)). A public employee, like Lt. Miller, must additionally establish that "(1) the speech was about a matter of public concern, (2) [her] interest in making the statement outweighs the employer's interest in promoting operational efficiency, and (3) the speech at issue was a substantial or motivating factor for the adverse employment action." *Albert v. Mitchell*, 42 F. App'x 691, 692 (6th Cir. 2002).

Defendants argue that the Complaint's generic references to policing, race, and other political and social topics are conclusory and lack the factual basis required to satisfy the "short and plain" pleading requirement Lt. Miller must satisfy under Fed. Rule Civ. Proc. 8(a)(2)). Plaintiff's Complaint states that she has been "featured on a national television show for her police work," and "routinely speaks publicly at cultural and law enforcement events about matters affecting law enforcement, CPD itself, and the citizens it serves." First Am. Compl., Doc. 3, ¶ 12. Specifically, Lt. Miller asserts that she speaks "frankly as a private citizen and sometimes critically about matters of public concern involving policing, race, and other political and social topics." *Id.* ¶ 99. Lt. Miller's Complaint lacks any further factual support regarding any specific statements made, to whom the statements were directed, or the overall context of these statements.

While the law allows for a lower threshold for ordinary citizens to claim First Amendment Protection, "[p]ublic employee plaintiffs are required to meet additional standards to establish that the speech at issue is constitutionally protected." *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003); *see also Oakes v. Weaver*, 331 F. Supp. 3d 726, 743 (E.D. Mich. 2018). Plaintiff must demonstrate that the speech at issue involves a matter of public concern and that Plaintiff's interest in addressing this matter outweighs the interests of her employer, inherently requiring the Court to analyze the substance and context of the underlying speech. *Id.* Here, Lt. Miller's Complaint offers only the conclusory assertion that her speech involved "matters of public concern" touching on race and policing, without any supporting detail as to the context, content, or form of any specific statements made. This is precisely the type of threadbare allegation that *Iqbal* and *Twombly* reject.

Moreover, even if the Court accepts the premise that Lt. Miller's unspecified and undated comments fall within the ambit of protected speech under the First Amendment, the Complaint still fails to describe a causal connection between this speech and any adverse action taken against Lt. Miler. As such, Lt. Miller's "conclusory allegations regarding First Amendment retaliation, which are devoid of any factual support whatsoever, fail to state a plausible claim upon which relief can be granted." *Meros v. Dimon*, No. 2:18-cv-510, 2019 WL 1384390, at *6 (S.D. Ohio Mar. 27, 2019).

### C. Procedural Due Process and *Monell* Municipality Liability Claims

Defendants also seek judgment on the pleadings as to Lt. Miller's procedural due process claims against Defendants Theetge and Snider, individually, and against the City under *Monell* for alleged constitutional violations. As a threshold matter, however, Plaintiff's Second Amended Complaint omits the procedural due process and *Monell* claims identified in its First Amended Complaint as counts VII and VIII. The Court views this as an abandonment of the claims.[3] However, even if Lt. Miller sought to reassert and did not intend to abandon those claims, Defendants are still entitled to judgment on the pleadings as to both counts for the reasons stated below.

Take the due process claims asserted against her supervisors, Defendants Theetge and Snider as individuals. Plaintiff's First Amended Complaint alleges that Defendants Theetge and Snider violated her constitutional rights by denying her procedural due process rights and

---

[3] Plaintiff's Second Amended Complaint is difficult to follow. Rather than file a Second Amended Complaint that supersedes or replaces her First Amended Complaint, Plaintiff's Second Amended Complaint "begins where Plaintiff's December 19, 2025, First Amended Complaint leaves off, reflecting material facts that have occurred since then, and revises Counts I, II, and III." Second Am. Compl., Doc. 13, ¶ 114. This has unfortunately tasked the Court with trying to piece together Plaintiff's First and Second Amended Complaints in an effort to understand what claims Lt. Miller ultimately seeks to recover on. Notwithstanding the suggestion that only Counts I, II, and III, were revised, Plaintiff included Counts IV and V in her Second Amended Complaint but completely omitted Counts VII and VIII. This is why the Court is led to believe that Plaintiff has abandoned those latter claims.

protections. First Am. Compl., Doc. 3, ¶¶ 104–08. To establish a procedural due process claim pursuant to 42 U.S.C. § 1983, Lt. Miller must demonstrate "(1) that [she has] a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that [she was] deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford [her] adequate procedural rights prior to depriving [her] of [her] protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999).

As Lt. Miller rightly contends, classified civil service employees have a constitutionally protected interest in their position under O.R.C. §§ 124.11 and 124.34. *See Wilder v. Wayne Cnty., Ohio*, No. 1:24-cv-01583, 2026 WL 1361673, at *3 (N.D. Ohio May 15, 2026) (finding "a classified civil servant [] held a constitutionally protected property interest in her employment under O.R.C. § 124.34."). Lt. Miller states she is a "twenty-plus-year CPD lieutenant," and does not allege any policymaking, board-level authority, or any other circumstances that would warrant exempt status as a classified civil service employee under Ohio law. Doc. 17, PageID 141. Thus, Lt. Miller has a constitutionally protected property interest in her position and must be afforded due process of law that comports with the Due Process Clause. *See Wilder*, 2026 WL 1361673, at *3; *Martinez v. Cuyahoga Cnty. Recorder's Off.*, No. 1:08-cv-2904, 2009 WL 10688196, at *2 (N.D. Ohio Sept. 16, 2009).

Classified civil employees are entitled to due process prior to being terminated or demoted from their positions. *See Martinez v. Cuyahoga Cnty.*, 2009 WL 10688196, at *2. Here, Lt. Miller does not allege that she was ever terminated from her position. To the contrary, she remains employed as a Cincinnati Police Lieutenant. Doc. 18, PageID 157. Plaintiff's Complaint alleges she was placed on administrative leave, she was transferred to the

Cincinnati Police Department's Records Section, and her police powers were suspended. First Am. Compl. Doc. 3, ¶¶ 50, 52, 55. The Court is not entirely persuaded that Lt. Miller was deprived of employment rights under this scenario. *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004) ("[A] plaintiff's subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action."); *Johnson v. Donahoe*, 642 F. App'x 599, 603 (6th Cir. 2016) ("A mere inconvenience or an alteration of job responsibilities is not enough to constitute an adverse employment action."). However, even assuming Lt. Miller plausibly alleges derivation, she still must demonstrate that the due process protections she was afforded were inadequate.

Even though classified civil employees are entitled to procedural protections under our constitution they are only due "a somewhat limited amount of process." *Martinez v. Cuyahoga Cnty.*, 2009 WL 10688196, at *2. The essential requirements of due process are "notice and an opportunity to respond . . . [and] to present reasons, either in person or in writing, why proposed action should not be taken." *Gillman v. Shlaghetter*, No. 3:08–cv–454, 2009 WL 1394822, at *3 (S.D. Ohio May 18, 2009). Lt. Miller here claims she received deficient due process because Defendants forced her to file a public records request to learn the substance of her fitness-for-duty allegations, denied her a short continuance to retain counsel before a "high priority" interview, and suspended her police powers based on reports authored by the same supervisor who had initiated her underlying investigation. Doc. 17, PageID 142. Plaintiff cites no case law in support of the proposition that the Due Process Clause requires any greater protections than what she received relative to her being placed on administrative leave or transferred to the Department's Records Section, and having her police powers

suspended. Conversely, the Sixth Circuit has "expressly rejected" the notion that due process requires an employee to receive a "hearing with a neutral administrator, the right to representation and questioning of witnesses, and a written explanation of the administrator's decision" prior to termination. *Wilder*, 2026 WL 1361673, at *5; *See Desmond v. Ohio Dep't of Transp.*, No. 3:04-cv-002, 2006 WL 462431, at *4 (S.D. Ohio Feb. 23, 2006).

Here, Lt. Miller admitted that on July 3, 2025, she received advance notice of an interview, and that the interview took place six days later as scheduled on July 9, 2025. First Am. Compl., Doc. 3, ¶ 50. As such, Plaintiff had both notice and an opportunity to respond prior to her transfer to the Records Section of the Cincinnati Police Department. *Id.* ¶¶ 50, 52. While Lt. Miller has an important interest in retaining her employment status without being demoted, "the federal courts cited above have found that lesser [due process] protection is sufficient even in cases of termination, much less demotion." *Desmond*, 2006 WL 462431, at *5. Thus, Lt. Miller has not plausibly alleged that the procedure used in this case deprived her of due process as guaranteed by the Fourteenth Amendment.

That brings the Court to the final claim at issue: Lt. Miller's *Monell* claim against the City of Cincinnati. First Am. Compl., Doc. 3, ¶¶ 109–12. Importantly, municipalities are "not subject to § 1983 liability 'for an injury inflicted solely by [their] employees or agents.'" *Martinez v. Wayne Cnty., Michigan*, 142 F.4th 828, 843 (6th Cir. 2025) (quoting *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1038 (6th Cir. 2024)). Instead, municipalities can only be held for their "*own* illegal acts." *Id.* Thus, Lt. Miller must prove that the City's unconstitutional conduct derives from a municipal "policy or custom." *Id.* However, under Sixth Circuit precedent, "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Martinez v. Wayne Cnty.*, 142 F.4th at 844. Indeed, the "lack of a clearly established

constitutional violation alone 'spells the end of [a] *Monell* claim.'" *Id.* (quoting *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 995 (6th Cir. 2017)). Here, because Lt. Miller's Complaint fails to state a plausible claim for either First Amendment retaliation or procedural due process deprivation, Plaintiff's *Monell* claim necessarily fails as a matter of law.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Judgment on the Pleadings (Doc. 15) The Court grants judgment to Defendants on the First Amendment retaliation, procedural due process, and *Monell* claims only.

**IT IS SO ORDERED.**

November 23, 2026

Jeffery P. Hopkins
United States District Judge